UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARTIN LEACH,** a resident and
citizen of the United Kingdom,

    Plaintiff and Counter-Defendant,

v

**FORD MOTOR COMPANY,** a
Delaware corporation conducting
business in Michigan,

    Defendant and Counter-Plaintiff.

Civil Action No: 03-74625
Hon. Paul D. Borman
Magistrate Judge Donald A. Scheer

---

BRADY HATHAWAY BRADY & BRETZ, PC
  Thomas J. Hathaway (P14745)
  David A. Hardesty (P38609)
  Jeffrey A. Steele (P51497)
Attorneys for Plaintiff/Counter-Defendant
1330 Buhl Building
Detroit, MI 48226
(313) 965-3700

KIENBAUM OPPERWALL HARDY
  & PELTON, P.L.C.
  Thomas G. Kienbaum (P15945)
  Robert Bruce Brown (P51378)
Attorneys for Defendant/Counter-Plaintiff
325 South Old Woodward Avenue
Birmingham, MI 48009
(248) 645-0000

FORD MOTOR COMPANY
  Katherine M. Kjolhede (P36980)
Co-Counsel for Defendant
Office of the General Counsel
Parklane Towers West, Suite 1500
Three Parklane Boulevard
Dearborn, MI 48126-2568
(313) 390-4211

FILED '03 DEC -3 P3:43

---

## ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTER-COMPLAINT

NOW COMES the Defendant and Counter-Plaintiff, FORD MOTOR COMPANY (hereinafter "Ford"), by its attorneys, KIENBAUM OPPERWALL HARDY & PELTON, and in answer to the Complaint of Martin Leach, and for its Affirmative Defenses and Counter-Complaint, says as follows:

1

## PARTIES, JURISDICTION AND VENUE

1. On information and belief Ford admits the allegations contained in paragraph 1 of Plaintiff's Complaint.

2. Ford admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

3. Ford neither admits nor denies the allegations contained in paragraph 3 of Plaintiff's Complaint for the reason that it is uncertain as to what is being alleged. Ford admits, however, that it does business in the State of Michigan, employs agents, and owns subsidiary corporations.

4. Ford neither admits nor denies the allegations contained in paragraph 4 of Plaintiff's Complaint for the reason that it is presently without sufficient information to form a belief as to the truth thereof.

5. Ford neither admits nor denies the allegations contained in paragraph 5 of Plaintiff's Complaint for the reason that it is presently without sufficient information to form a belief as to the truth thereof.

6. Ford neither admits nor denies the allegations contained in paragraph 6 of Plaintiff's Complaint as it is currently without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 5 of Plaintiff's Complaint, which are an essential element of the assertion of jurisdiction under paragraph 6.

## ALLEGED FACTS

7. Ford admits that Plaintiff began working for its subsidiary, Ford Motor Company Limited (hereafter "Ford Britain") in 1975 and admits that he continued to be employed until his resignation in August 2003, but denies the remaining allegations in paragraph 7 of Plaintiff's Complaint as untrue.

8. Ford admits the allegations contained in paragraph 8 of Plaintiff's Complaint.

9. Ford admits that Plaintiff, like all other LL1 level employees of Ford, was required to execute a Trade Secrets/Non-Compete Statement, a copy of which is attached hereto as **Exhibit A**, and that consideration was provided to Plaintiff in return for the commitments contained in **Exhibit A**.

10. Ford admits only that the passage quoted in paragraph 10 of Plaintiff's Complaint, though incomplete, is contained within "the statement." Answering further, Ford denies the remaining allegations of paragraph 10 for the reason that "the statement" precludes Plaintiff from use or dissemination of Ford's confidential information in all circumstances, and that confidential information, as is more fully set forth in Ford's Counter Complaint, will inevitably be used or disseminated under certain circumstances.

11. Ford neither admits nor denies Plaintiff's belief as stated in paragraph 11, being currently without sufficient information to form a belief as to the truth thereof. Answering further, however, Ford denies any allegation or implication that circumstances existed which could have led Plaintiff to reasonably conclude that "his job was under threat."

12. Ford neither admits nor denies the allegations contained in paragraph 12 of Plaintiff's Complaint for the reason that it is currently without sufficient information to form a belief as to the truth thereof.

13. On current information and belief, Ford admits the allegations contained in paragraph 13 of Plaintiff's Complaint.

14. Ford neither admits nor denies Plaintiff's belief as stated in paragraph 14, being currently without sufficient information to form a belief as to the truth thereof.

Answering further on current information and belief, however, Ford denies any allegation or implication that circumstances existed which could have led Plaintiff to reasonably conclude "his job was under threat."

15. Ford admits that Plaintiff requested a meeting with David Thursfield and John Walker in August of 2003, but neither admits nor denies the apparent implication intended by the phrase "thus arranged," incorporating its response to paragraph 14 above.

16. Ford denies the allegations contained in paragraph 16 of Plaintiff's Complaint for the reason that they are untrue.

17. Ford neither admits nor denies Plaintiff's alleged goals and conclusions as stated in paragraph 17 of the Complaint as it is not in a position or with sufficient information to know the state of his mind. Answering further, Ford denies any allegation of implication that circumstances were such that could have led Plaintiff to reasonably form such goals and conclusions.

18. Ford admits that a meeting occurred between Messrs. Leach, Thursfield, and Walker at or about 8:00 a.m. on August 7, 2003, but denies as untrue the apparent implication intended by referencing this as "the meeting."

19. Ford denies the allegations and implications contained in paragraph 19 for the reason that they are untrue as stated. Answering further, Ford admits only that after some general discussion at the meeting, Plaintiff indicated that certain circumstances involving his employment were "unacceptable to [him]", that he wanted to terminate his employment with Ford, that he intended to accept other employment, and that he currently had job offers from two other companies.

20. Ford admits the allegations contained in paragraph 20 of the Complaint. Answering further, Ford avers that Plaintiff responded to the inquiries of Mr. Walker and/or Mr. Thursfield by admitting he then had two separate job offers.

21. Ford denies the allegations contained in paragraph 21 of the Complaint for the reason that they are untrue as stated. Upon hearing that Plaintiff had obtained two offers of employment, Mr. Thursfield reminded him of the non-compete commitment contained in "the statement." In response, Plaintiff asserted that, in his view, the non-compete agreement was unenforceable.

22. Ford denies the allegations contained in paragraph 22 of the Complaint as untrue. Answering further, Ford admits only that Messrs. Thursfield and Walker informed Plaintiff that they would have to advise Management in Dearborn, Michigan of Plaintiff's resignation.

23. Ford denies the allegations contained in paragraph 23 of Plaintiff's Complaint for the reason that they are untrue.

24. Ford denies the allegations contained in paragraph 24 of Plaintiff's Complaint as untrue, averring in support thereof that Mr. Thursfield and Mr. Walker's repeated inquiry of Plaintiff whether he was sure that "this is what he wanted to do" evidenced the understanding that he was resigning his employment.

25. Ford neither admits nor denies the allegations with respect to Plaintiff's state of mind being without sufficient knowledge or information to form a belief as to the truth thereof. Answering further, Ford denies as untrue any allegation or implication that Plaintiff could have then reasonably held his stated beliefs and conclusions. Plaintiff, according to his version of the facts, had absolutely nothing to offer Ford at the time. He was an at will employee, admittedly wanted to leave Ford to join a competitor from whom he had received an extremely lucrative offer of employment (at approximately 5

times his then salary) and was aware of the fact that one of the offerors, Fiat, had apparently required that Ford affirmatively state that it had no problem with Plaintiff's employment with Fiat. Under the circumstances, there was nothing that Plaintiff could, or did, offer to Ford's representatives as a possible incentive to waive, or even consider waiving, the provisions of the non-compete agreement.

26. Ford denies that neither Mr. Thursfield nor Mr. Walker acted as though Plaintiff had resigned during the meeting for the reason that it is untrue. Answering further, Ford admits only that Plaintiff did not leave the workplace after the meeting or begin packing, or that Messrs. Thursfield or Walker asked him to do so.

27. Ford admits only that Plaintiff continued to perform certain of his duties following the meeting. Answering further, Ford denies any allegation or implication that such actions were inconsistent with his resignation from employment with Ford for the reason that it is untrue.

28. Ford denies the allegations contained in paragraph 28 of the Complaint for the reason that they are untrue.

29. Ford denies the allegations contained in paragraph 29 of the Complaint for the reason that they are untrue.

30. Ford denies the allegations contained in paragraph 30 of the Complaint for the reason that they are untrue.

31. Ford admits only that its General Counsel faxed Plaintiff a letter on August 7, 2003, and that the passage quoted in paragraph 31 of the Complaint is contained in that letter. Answering further, Ford denies Plaintiff's conclusory allegations based on the quoted passage for the reason that it is taken out of context and given undue emphasis to an extent that makes it a misleading and untrue statement of General Counsel's position.

32. Ford admits that Plaintiff reported at his work station on Friday, August 8, 2003, but neither admits nor denies that he was performing his "regular duties," being without sufficient knowledge or information to form a belief as to the truth thereof.

33. Ford admits only that Plaintiff responded to the letter from Ford's General Counsel, and that the response speaks for itself.

34-37. Ford admits only that, on August 8, 2003, Plaintiff met with Mr. Walker and Mr. Thursfield and asserted that he had not previously intended to resign, but that he wanted a "mutually acceptable" separation from Ford. It was apparent that Plaintiff in the interim had received advice that his non-compete agreement might, after all, be enforceable. In any event, Messrs. Walker and Thursfield confirmed that his resignation was accepted. Ford denies the remaining allegations and implications contained in paragraphs 35 through 37 for the reason that they are untrue.

38. Ford admits that Plaintiff was advised that a press release would be issued to announce his resignation.

39. Ford neither admits nor denies the allegations contained in paragraph 39 of the Complaint, being currently without sufficient knowledge or information to form a belief as to the truth thereof.

40. Ford admits only that its General Counsel sent Plaintiff another letter, dated August 11, 2003, which letter speaks for itself. Answering further, Ford denies as untrue that this letter was "in sharp contrast to his August 7 letter."

41. Ford admits that Plaintiff responded to General Counsel's August 11, 2003 letter asserting that he had not resigned.

42. Ford admits that it issued a press release announcing that Plaintiff had resigned. Answering further, Ford denies the remaining allegations and implications contained in paragraph 42 for the reason that they are untrue.

43. On information and belief, Ford admits the allegations contained in paragraph 43 of the Complaint.

44. Ford admits only that on August 22, 2003, its General Counsel again wrote to Plaintiff, which letter speaks for itself. Answering further, Ford denies that any part of the letter was false or untrue.

45. Ford admits only that the Automotive News printed a story on or about August 25, 2003 reporting that Plaintiff had resigned his employment with Ford, and that Ford intended to hold him to his non-compete agreement.

46. Ford admits that it commenced suit against Plaintiff in Germany, and that Plaintiff counterclaimed in that action. Ford denies the remaining allegations contained in paragraph 46 of the Complaint as untrue.

47. Ford admits that following Plaintiff's resignation, it appointed a successor to his position.

48. On information and belief, Ford admits only that Fiat informed Plaintiff, in accordance with the expressed terms of the understanding Plaintiff had negotiated with Fiat, that Fiat was rescinding its offer of employment to Plaintiff because he had not provided the acknowledgement of Ford that he was not bound by the terms of his non-compete agreement with Ford. Answering further on current information and belief, Ford denies any allegation that it had threatened to sue Fiat or that Fiat had so advised Plaintiff, for the reason that it is untrue.

49. On information and belief Ford, admits the allegations contained in paragraph 49 of the Complaint, further averring that the letter speaks for itself.

50. On information and belief Ford, admits the allegations contained in paragraph 50 of the Complaint.

51. Ford admits that, once Fiat announced that it was withdrawing its offer of employment to Plaintiff, Ford advised the tribunal in Germany of that fact, and the consequences of that fact.

52. Ford neither admits nor denies the allegations and conclusions contained in paragraph 52 of the Complaint, being without sufficient knowledge or information to form a belief as to the truth thereof.

## ALLEGED COUNT I;
## REQUEST FOR INJUNCTION AND DECLARATORY JUDGMENT

53. Ford incorporates its answers to paragraphs 1 through 52 as if the same were herein fully set forth.

54. Ford admits only that the Plaintiff's non-competition agreement with Ford contains a provision that it prohibits him with accepting employment with a competitor of Ford for a period of 2 years immediately following his voluntary separation from Ford. Answering further, Ford denies that "voluntary termination" is the only provision of the agreement that prohibits Plaintiff from accepting employment with a competitor of Ford for the reason that the agreement further prohibits Plaintiff from disclosing or using Ford's confidential and proprietary information under any circumstances and, consequently, prohibits him from working for certain potential employers if such employment would inevitably lead to the disclosure or use of Ford's confidential and proprietary information.

55-59. Ford denies as untrue the allegations contained in paragraphs 55-59 of Plaintiff's Complaint.

WHEREFORE, Defendant requests a judgment of no cause for action together with its costs and reasonable attorney fees.

9

## ALLEGED COUNT II;
### TORTIOUS INTERFERENCE WTH BUSINESS EXPECTANCIES

60. Ford incorporates its answers to paragraphs 1 through 59 as if the same were herein fully set forth.

61. On information and belief, Ford denies the allegations of paragraph 61 of the Complaint for the reason that under the circumstances as alleged by Plaintiff, no such relationship or expectancy could have reasonably existed.

62. Ford admits only that it became aware that Fiat had offered Plaintiff a job if he could obtain Ford's acknowledgment that he was not bound by his non-competition agreement with Ford.

63. Ford denies the allegations contained in paragraph 63 of the Complaint, including sub-paragraphs a-d, for the reason that they are untrue.

64-67. Ford denies the allegations contained in paragraphs 64-67 of the Complaint as untrue, averring in support thereof that, according to Plaintiff's own averments, the only circumstance under which Fiat would have employed Plaintiff required an affirmative statement by Ford that it did not consider Plaintiff to be bound by a non-compete agreement, which statement would not have been true and would have been unwarranted. Additionally, Plaintiff was not entitled to work for Fiat given that his access to highly confidential information within Ford, as more fully set in Ford's Counterclaim, would have precluded his employment under the doctrine of inevitable disclosure.

WHEREFORE, Ford requests a judgment for no cause for action together with its costs and reasonable attorney fees.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim upon which relief may be granted.

2. Plaintiff's claim is not ripe and there is currently no justiciable controversy before this Court.

3. Plaintiff has failed to tender back the consideration he received from Ford for the agreement he now claims is unenforceable.

4. Plaintiff has unclean hands and has breached his duties of loyalty and fiduciary responsibility to Ford.

5. Plaintiff is estopped from asserting his claims by his own conduct.

6. Ford's actions in regard to Plaintiff are privileged by contract and common law.

7. Plaintiff's employment by a competitor of Ford will result in the inevitable use and disclosure of Ford's trade secret, confidential and proprietary information to the unfair, substantial and irreparable harm of Ford.

## FORD MOTOR COMPANY'S
## COUNTER-COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COMES the Defendant and Counter-Plaintiff, Ford Motor Company (hereafter "Ford"), and in support of its Counter-Complaint for Declaratory and Injunctive Relief against Martin Leach ("Leach") states as follows:

1. Ford incorporates its above answers to paragraphs 1-67 of Leach's Complaint, as if the same were herein fully set forth.

2. Leach, as one of Ford's top leadership level employees, and by his position as President and Chief Operating Officer of Ford of Europe, became privy to highly confidential, sensitive and trade secret information concerning Ford's plans and strategies in the highly competitive European car market, as well as worldwide.

11

3. Ford goes to great expense and effort to maintain the integrity, confidentiality and trade secret status of the information referred to in paragraph 2, above. Its details, therefore, will be provided only as needed by the Court, in sealed form and subject to protective order, in accordance with Federal Rule of Civil Procedure 26(c)(7) and the State of Michigan's Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1906. For present purposes, Ford avers that Plaintiff and Counter-Defendant Leach was privy to and remains knowledgeable of Ford's most sensitive and confidential business plans and strategies.

4. Leach, like all other top leadership level employees of Ford, was required as a condition of his employment to sign a Trade Secret/Non-Compete agreement in return for valuable consideration. Leach voluntarily executed the Trade Secret/Non-Compete agreement (copy attached hereto as **Exhibit A**) on May 17, 2002, and accepted the valuable consideration. In part, the Trade Secret/Non-Compete agreement that Leach signed prohibits him from accepting employment with a competitor of Ford for a period of two years following his voluntary termination of employment with Ford.

5. In addition to the foregoing prohibition against employment with a competitor upon voluntary termination, Leach also committed by the Trade Secret/Non-Compete agreement to "always refrain from any direct or indirect use or disclosure (whether intentional, negligent or reckless) of any trade secret or confidential or proprietary information belonging to Ford Motor Company to any person or business without regard to the nature of my termination." (*See* **Exhibit A**.)

6. On August 7, 2003, by his own self-initiated, affirmative, willful and intentional words and actions, Leach voluntarily terminated his employment with Ford.

7. On information and belief, in or about July 2003, while still continuing his employment with Ford, Leach entered into secret and extensive negotiations with a major Ford competitor, Fiat. Those negotiations led to Fiat offering Leach employment as the Chief Executive Officer of Fiat Auto SpA at an annual salary of One Million Eight Hundred Euros (approximately five times his annual salary with Ford), together with a signing bonus of One Million Euros. The offer was conditioned, however, on Leach providing Fiat with evidence of acknowledgement by Ford that Ford did not believe Leach's employment with Fiat would contravene any contractual obligation he had to Ford.

8. Leach accepted the offer of employment from Fiat and would have become an employee of Fiat but for Ford's unwillingness to acknowledge that such employment would not contravene any contractual obligations that he had to Ford.

9. As Chief Executive Officer of Fiat, Leach would have been responsible for development and implementation of Fiat's strategic plans, including its anticipation of, reaction to, and initiatives against the business moves of major competitors such as Ford in the very highly competitive European market.

10. As Chief Executive Officer of Fiat, it would have been impossible for Leach not to rely on and inevitably disclose, whether intentionally or inadvertently, the confidential and trade secret plans and strategies of Ford with which he was such an integral part while employed by Ford, particularly those directed at Fiat. This would have occurred regardless of any intent on the part of Leach to adhere to his commitments to Ford, and regardless of any intent of Fiat not to profit from such disclosures. Instead, the disclosure would have occurred as the inevitable result of the

13

fulfillment of Leach's duties to Fiat, which had required him to attempt to gain a competitive advantage on behalf of Fiat, to the detriment of other competitors, such as Ford.

11. On information and belief, Leach continues to seek employment with competitors of Ford, which employment would result in the inevitable use and/or disclosure of Ford's valuable, proprietary, confidential and trade secret information in unfair competition with Ford to the substantial and irreparable harm of Ford.

### COUNT I – VIOLATION OF THE UNIFORM TRADE SECRETS ACT, MICH. COMP. LAWS § 445.1901 *et seq.*

12. Ford herein incorporates as if fully restated the allegations set forth in paragraphs 1 through 10 above.

13. Leach's actions, as described and incorporated by reference above, constitute actual or threatened misappropriations of trade secrets as defined by the Uniform Trade Secrets Act, entitling Ford to injunctive relief.

### COUNT II – BREACH OF CONTRACT

14. Ford herein incorporates as if fully restated the allegations set forth in paragraphs 1 through 13 above.

15. Leach's actions, as described and incorporated by reference above, constitute an actual or anticipatory breach of his contractual obligations to Ford, entitling Ford to injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Ford requests that the Court grant it injunctive relief in the form of preliminary and permanent injunctions pursuant to Mich. Comp. Laws § 445.1903 and

the Court's inherent equity powers ordering that Plaintiff and Counter-Defendant Martin Leach honor the terms of his May 17, 2002 Trade Secret/Non-Compete Statement with Ford, and that he otherwise be barred from accepting employment with, or working directly or indirectly for a competitor of Ford for a period of 2 years.

                Respectfully submitted,

                KIENBAUM, OPPERWALL, HARDY &
                PELTON, P.L.C.

                By: _____
                THOMAS G. KIENBAUM (P15945)
                ROBERT BRUCE BROWN (P51378)
                Attorneys for Defendant/CounterPlaintiff
                325 South Old Woodward Avenue
                Birmingham, Michigan 48009
                (248) 645-000

Dated: December 3, 2003

### Trade Secrets/Non-Compete Statement

I acknowledge to Ford Motor Company (including, as used herein, any affiliates of Ford Motor Company)

- I am aware of trade secrets and/or other confidential or proprietary information concerning the business plans, strategies, tactics, manufacturing know-how, good will, sources of supply, customers and other trade secrets or confidential information not generally known to others engaged in similar businesses; and,

- During the course of my continued employment, I will become aware of trade secrets or other confidential or proprietary information concerning the business plans, strategies, tactics, manufacturing know-how, sources of supply, customers and other trade secrets or confidential information not generally known to others engaged in similar businesses.

I agree that Ford Motor Company is entitled to be protected from the possibility that I may seek to become or actually become associated with a business that competes with Ford Motor Company. This would be unfair competition, because I have, and will have, extensive knowledge about Ford Motor Company, including the confidential information described above.

I also agree:
- For a period of two years immediately following my voluntary termination, as an officer, director or employee of Ford Motor Company, I shall not, directly or indirectly, work for or associate with any business that competes in trade or commerce with Ford Motor Company; and

- Always to refrain from any direct or indirect use or disclosure (whether intentional, negligent or reckless) of any trade secret or confidential or proprietary information belonging to Ford Motor Company to any person or business, without regard to the nature of my termination; and,

- To refrain from taking any action that will cause the termination or interference of existing business relationships between or among Ford Motor Company, Ford Motor Company employees, and any of their customers or suppliers for two years following my voluntary termination from Ford Motor Company.

I acknowledge that if I violate any of the terms of this memorandum, I will cause severe, immediate and irreparable harm to Ford Motor Company.

My decision to sign this memorandum was made voluntarily and freely, and, in consideration of a restricted stock grant of Ford common stock having the value of one time my current base salary, the sufficiency and receipt of which is acknowledged. The actual number of shares will be determined by using the Fair Market Value (FMV) of the Ford stock on May 31, 2002. FMV is the average of the high and low stock prices for that day. The stock will be issued on June 1, 2002 with restrictions that will lapse on the 5th anniversary of the grant.

C:\execpersonnel\npmtradesecret2.doc        4/22/02

2

I acknowledge that this statement does not, and will not, alter my status as an employee-at-will. If any of the terms of this memorandum are found by a court of competent jurisdiction to be unenforceable due to the duration, scope, geography or territory, I agree that the court shall be authorized to construe or interpret these terms in a manner that makes this memorandum enforceable within that jurisdiction. The law of the State of Michigan (excluding its conflict of laws provisions) shall govern the meaning, construction and interpretation of this memorandum even if I am employed elsewhere.

Nothing contained in this document shall be construed to supersede, modify or affect the terms or provisions of any existing executive or employee benefit plan.

This memorandum may not be changed or amended unless it is in writing and signed by the parties.

Signed by: [signature]

Date: May 17, 2002

C:\...\personal\vp\widescreen.doc

4/2/02

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARTIN LEACH,** a resident and citizen of the United Kingdom,

  Plaintiff,

v

**FORD MOTOR COMPANY,** a Delaware corporation conducting business in Michigan,

  Defendant.

Civil Action No: 03-74625
Hon. Paul D. Borman
Magistrate Judge Donald A. Scheer

---

BRADY HATHAWAY BRADY & BRETZ, PC
 Thomas J. Hathaway (P14745)
 David A. Hardesty (P38609)
 Jeffrey A. Steele (P51497)
Attorneys for Plaintiff
1330 Buhl Building
Detroit, MI 48226

KIENBAUM OPPERWALL HARDY
 & PELTON, P.L.C.
 Thomas G. Kienbaum (P15945)
 Robert Bruce Brown (P51378)
 William B. Forest III (P60311)
Attorneys for Defendant
325 South Old Woodward Avenue
Birmingham, MI 48009
(248) 645-0000

FORD MOTOR COMPANY
 Katherine M. Kjolhede (P36980)
 Jennifer A. Zinn (P41469)
Co-Counsel for Defendant
Office of the General Counsel
Parklane Towers West, Suite 1500
Three Parklane Boulevard
Dearborn, MI 48126-2568
(313) 322-3000

---

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2003, I did serve a copy of **Answer to Complaint, Affirmative Defenses and Counter-Complaint** and this **Certificate of Service** upon:

Thomas J. Hathaway
Brady Hathaway Brady & Bretz, PC
1330 Buhl Building
Detroit, MI 48226

by placing said documents in an envelope addressed as above with first-class postage thereon being fully prepaid and depositing same into a United States mail receptacle located in Birmingham, Michigan.

*[signature]*
MICHELLE R. BEVERIDGE